Your Honor, John Friedman for the petitioners. Your Honor, this case I believe is basically a factual case. The immigration judge, and affirmed by the BIA, came to the conclusion that the petitioners did not suffer past persecution. There was a confrontation. They were taken to the police. The female respondent's law office in Alexandria was ransacked. Let me ask you about those incidents because I'm trying to figure out which ones are linked to official conduct and which ones may not be. Clearly the arrest is official conduct, but it was an arrest where at least everybody was taken to the police station. Yes, Your Honor. I want to call him Ahmed, but I forget his last name. The gentleman who allegedly instigated this whole mess, and then the two respondents. Do we know from the record whether Ahmed was detained also? I don't think we know that from the record. It appears that he was not. They made a determination that Ahmed was in fact a Muslim, and the petitioners were confiscated. Where can I find that in the record? I saw that in the briefs, but I wasn't sure I could find it in the record. And if it's there, I'll look again. But all I could find in the record was all three were taken to the station, and your clients were detained for two days. Some things happened while they were there, and I couldn't tell what happened to them. Your Honor, I don't think they know for sure. Okay, so we just don't know whether he was detained or not. I believe that's correct, Your Honor. Your clients were released, and then Ms. Saman's law office was ransacked. Yes, Your Honor. But the police weren't told about any possible connection between that and the prior attack. That's correct, Your Honor. I think it was determined at that time that filing a police report would have been an exercise in futility. They made it known, but no action was ever taken, no official action. Yeah, they made it known to police that there was an incident at the office, but they didn't make it known to police that Ahmed might be behind the incident. Is that correct? That's correct, Your Honor. And then there's an attack by two white-robed men on the street with sticks. Yes, Your Honor. And the link in your argument to that is that they appear to belong to the same religious sect as Ahmed. That's correct, Your Honor. And we also believe that it's more likely than not that it was at the instigation of Ahmed, because otherwise there would be no particular reason for a physical beating. We know, based on the country reports, that there was significant discrimination by the Muslim Brotherhood, by Muslims, against Coptic Christians. But in order for it to rise to the level of persecution, there would have had to be other instances, which in this case were the ones that we've enumerated, together with the beating. I don't think it was common practice at that time for members of the Muslim Brotherhood to attack Coptic Christians for no particular reason. Discrimination, yes. Beatings, no. So therefore, Your Honor, we contend that it would be more likely than not that it was linked to Ahmed. And Ahmed's concern, which was discussed, was not just because they were Coptic Christians, but because they were accused of proselytizing. Let's assume that on this record I would agree with you that it's more likely than not, or it's a reasonable conclusion. Is that enough for us to give your clients relief? Don't we have to conclude that no reasonable fact finder could find to the contrary? Your Honor, I think that the immigration judge found the petitioner's testimony credible, or at least in the places where he questioned credibility, he really didn't go. The BIA certainly assumed credibility. Yes, Your Honor. I think the immigration judge questioned the credibility on the incident involving the car. Your Honor, the immigration judge did state that she found the petitioner's credible, but interestingly, the issue raised by the court before this hearing was on the issue of judicial notice. Ironically, one of the issues in this case was the immigration judge taking judicial notice that the injury sustained by the petitioners was not severe. She stated in her decision that because a cast only stayed on for three weeks, she took judicial notice that it was not a serious injury. That's somewhat speculative, right? On the part of the immigration judge, I believe so, Your Honor, because it wasn't based on any public records, it wasn't based on any common knowledge. I think the immigration judge seemed to suggest that it was common knowledge that if an injury was severe, a cast would remain on for more than three weeks. There's no evidence to that effect. Did the BIA make the same assumption? I think they just affirmed the judge's findings, and they did say that there was not severe injury. I think I have it marked in their decision. Well, that's okay. So we asked you in this case to be prepared to discuss the issue, the application of MUFOR. Does it apply to this case, and if so, how? I think it does, Your Honor. First, with respect to past persecution, I'm not so sure that the MUFOR case would apply to the findings relating to past persecution, but it would certainly relate to the issue of credible fear of future persecution. So what would you like us to take judicial notice of? Your Honor, that with the election of Mr. Morsi as president of Egypt and his seizing judicial powers as well as executive powers and his documented sympathizing with the Muslim Brotherhood, I believe that it would be a clear assumption. Well, let me strike that, Your Honor. I believe it would be reasonable to assume that the conditions in Egypt with the rise of Mr. Morsi have worsened with respect to the persecution of Coptic Christians. It was bad before. I would argue that before the election of Mr. Morsi and his seizing of additional powers, there would still be a basis for finding credible fear of future persecution. But with the rise of Mr. Morsi, I think that's a significant change in country conditions for the worse. Well, is it Morsi or was it the revolution? Well, I think Morsi was elected president, and I'm not sure exactly where the revolution fit in, but the end result was the emergence of Mr. Morsi and his then seizing of additional powers beyond the normal executive powers. But he's backed off of that. It depends on how many days we go back, Your Honor. I think that with the demonstrations, he's backed off somewhat on seizing judicial powers, but he's still pursuing his strength from his executive position. Isn't this a little different than before? I mean, the previous regime here was a brutal dictatorship. Well, before it was kind of... So, you know, to change, I'm not sure that having an elected president, even if he comes from a group perhaps more hostile to Coptic Christians than others, I'm not sure having an elected president is the kind of sea change that we take... I'm just not sure what you want us to take judicial notice of. His election? The revolution? Well, not so much the revolution or his election, but the net result. But how do we take judicial notice of the net result? Is it a fact beyond dispute? What facts do you want us to take judicial notice of? I think that with the election of Mr. Morsi, the strength of the Muslim Brotherhood has increased. The threat of persecution, the credible fear of persecution, is probably greater today under the leadership of Mr. Morsi than it was previously. Do you think that Saman could file a motion to reopen based on the fact that there have been changed country conditions? Well, Your Honor, the threat of... At which point you could well document all of the changes that have taken place? Frankly, Your Honor, I think the stronger argument is that there was past persecution. Well, I understand. And if we found that, of course, if we found that the IJ and the BIA erred on that issue, that would be a separate... that's a separate matter. But let's assume that we don't find a reason to upset the decision below, but you're now claiming that your claim of future persecution, your client's claim, is greater because of changed country conditions. Shouldn't that be the subject of a motion to reopen, as Judge Pastris asked you? Depending on Your Honor's decision in this case, certainly we would urge a finding of past persecution. But with respect to the credible fear of future persecution, just to what extent Morsi's emergence has increased the threat, certainly I would be prepared to take a second swing at the ball, so to speak, and I would argue changed country conditions and a stronger fear of future persecution. But that would be absent the court's finding of past persecution. And it's interesting, the Gafour case was kind of the opposite. It was improved country conditions based on a 1992 country conditions report showing that conditions had improved considerably in Fiji. And then the court took... I don't think that's what Gafour was all about. Well, it was taking judicial notice that the country conditions deteriorated after that country report. Well, in Gafour, the original BIA decision relied on changed country conditions for the better. And by the time the case came to the court, the country conditions had changed back to worse. So there was an erroneous assumption below that the BIA couldn't correct because the information wasn't in front of it that the court thought it ought to send it back to consider. Yes. So in Fiji, there were improved country conditions according to the 1992 report and then deteriorating country conditions, and it was those deteriorating conditions, I believe, that the court took judicial notice of. All right. Okay. Jeffrey Meyer for the respondent, Your Honor. May it please the court. Just by way of introduction, I think I'll go through some of the merits of the case and then try to address separately your request that we talk about Gafour and its possible application. Petitioner has failed to establish that the record evidence compels a conclusion contrary to the agency's determination that Petitioner did not meet her burden of providing sufficient evidence to establish eligibility for asylum and withholding of removal. First, none of the acts of mistreatment about which Petitioner complained, being struck or briefly detained, or the suffered property damage resulted in any serious injury and did not rise to the level of persecution because they were not sufficiently serious or sustained. Well, aren't we entitled to add these all up? I think you are, with probably the exception of the two men with sticks where they found no nexus. I'm sorry, which ones? The two men with sticks the board found that there wasn't sufficient evidence that that was related to the Catholic Christian faith. They didn't say anything. Didn't say anything and they were dressed similarly to lots of people in Egypt. Yeah, exactly. It was just not enough there. But with respect to the other incidents where there are nexus, you do look at them in the aggregate. So let's assume for a moment, because I think the IJ's finding on this is a little weak, that Ms. Simon suffered, because the other Petitioner's claim is derivative, that Ms. Simon suffered a broken bone as a result of the attack. And I guess your theory is the attack isn't one of the injuries we can rely on. Well, I think her testimony was she got a scratch on the bone. I don't know. Well, but this issue was she only had a cast on for three weeks, so the IJ took judicial notice of the fact that it wasn't that serious. I think the three weeks cast issue was to the derivative applicant. He was hit in the leg. Right, so his claim is entirely derivative. Yeah, he's hit in the leg. He has a splint for three weeks. So focusing on Ms. Simon for a moment, your theory of the case is that she just didn't suffer the kind of injury, psychic or physical, that would arise to persecution. That's correct, Your Honor. And that the BIA didn't abuse its discretion in self-finding. Correct. Well, the discrimination against Coptic Christians had been going on in that country for a long, long, long, long, long, long time. Yeah, and there's two. Could you speak just a little louder, please? Of course. Yes, and there's two Ninth Circuit decisions, Mansour and I believe it's Malti. Malti, 381, Fed Third, 942. And Mansour is 390, F Third, 667. They both talk about, yeah, there's ongoing discrimination in the country, but it's insufficient to constitute persecution. No pattern in practice of persecution against Coptic Christians. So, yes, Your Honor, there has been this situation for quite some time in Egypt. Well, here's a little summary of current country conditions in Egypt. And this is what I learned. On October the 9th, 2011, the government used violence against demonstrators who were mostly Coptic Christians at the Maspero Radio and Television Building in Cairo. Twenty-five were killed, over 300 injured. And videos recorded the military police running over at least 12 demonstrators with armored vehicles. Then in February of 2011, we had Egyptian armed forces. They used violence against unarmed Coptic Christians at a monastery at St. Vishoy in Wadi Natron, injuring a monk and six workers. Soldiers used armed personnel carriers to destroy a wall built around the monastery, fired rifles and grenades in the direction of the monks and the workers. And then we had another one on the 24th of November in 2010. Clashes between police and Coptic rioters over a church building dispute resulted in two deaths and as many as 68 people injured. And police were filmed throwing rocks alongside Muslim civilians at cops. And that's some of the current information that comes out of current country condition reports. And obviously the board is not going to have the benefit of a 2010 or 2011 country report. It makes its decision on the record before it. So what should we do? If it appears that there's a significant change in country conditions, do we remand to the board to consider them or do we tell the petitioner to file a motion to reopen? The latter, Your Honor. That's the procedure. If he believes that there's a change that affects his claim for relief, the regulations are clear. There's no number or time limitations on motions to reopen based on country conditions. So at any time he can come in and say, hey, now I think they've changed sufficiently that I now face persecution. And it's incumbent upon him to come forward with that evidence. And I think this is a good chance for me to directly talk about GFOR, if I may. Under the Immigration and Nationality Act, the court is to decide the petition only on the administrative record on which the order of removal is based. And that's 1252B-4A AUFC. And I recognize that the Fischer-Enbach decision purports to, well, does actually create an exception, that extra record evidence can only be considered where such evidence had been considered by the board or that the board abused its discretion in failing to consider such evidence. And while GFOR purports to create a further exception to Fischer, it is at odds with the court's previous decision of Altawill v. INS, which is 179, Feb. 3, 791, Ninth Circuit, 1999, which held the court cannot order the taking of additional evidence by the board under 28 U.S.C. 2347C. So I don't think... Breyer. So you're telling us nicely you think GFOR was improperly decided? Gershengorn. Yeah, I think that... Breyer. Well, it's a three-judge... Gershengorn. Yeah, we're stuck with it. If it applies, I mean, it's... Breyer. Well, you also have Attawill, which says the opposite, which is also a three-judge panel, which preceded GFOR. So I don't think that GFOR can tacitly overturn the prior three-judge panel. Gershengorn. Wasn't GFOR just... Wasn't it just dealing with a unique circumstance? Breyer. I'm sorry. Gershengorn. It's just dealing with a circumstance that's so significant that happens after the BIA's decision that, like they say, they're just... they really can't ignore it. I mean... Breyer. Yeah, I'm not sure you... Gershengorn. It's a significant change in the country, in Indonesia. Breyer. I don't think GFOR is actually on point factually. And I think you guys were... the court was getting to this, pardon me, in the discussion about the facts of GFOR. And that is that, in that case, GFOR actually was able to prove past persecution, right? And that then arises a presumption of future persecution. The government comes in and shows significant changed country conditions that rebutted the presumption. While before the court, GFOR seeks to introduce new evidence that now the country conditions have returned to the prior state where he was persecuted. Gershengorn. But the bad guys were back in power. Breyer. Right. Gershengorn. The guys who had persecuted him in the first place. Breyer. GFOR wasn't going to ignore that. Gershengorn. Right. But in this case, we had no finding of past persecution. I mean, you'd be remanded to see if he was persecuted in the first instance.  Breyer. Well, it's here, future persecution, if you were to go back. Gershengorn. Yeah. But there's no... I mean, there's no presumption to rebut.  Breyer. Isn't the principle somewhat similar, though?  Well, I mean, you'd be giving him a chance to affirmatively prove... Breyer. You know, I'm not sure that what Morsi has done recently is something that is a proper subject for GFOR, but what about the revolution? Well, I mean, it's one thing to say, well, we acknowledge that there's been a change, a regime change. But what that change means, I mean, that's not the role of this court to go into some kind of... No, I mean, I don't... Right. Before, they said nothing other than, we're going to send this back to the BIA to take another look. Yeah, I mean, I think... They expressed no opinion one way or the other. Do you know what other circuits have been doing with this issue? With GFOR? Mm-hmm. No, not offhand. You didn't check before you came? Okay. I do remember some Sixth Circuit case. Yeah, Sixth Circuit's all over the place. Yeah, but... Let me... I'm sorry, I should have... It's all over Ohio. Let me just go back. I want to go back to past persecution for a moment, if we could. Sure. So in response to Judge Hurwitz's question, you said, we take a look at the incidents that she points to cumulatively. Just outline for me, in your view, what are the credible instances that should be considered in totality in determining whether she suffered past persecution? Okay. Credible meaning meritorious, right? Well, no, I mean, the IJ tried... What's odd about this case is the IJ did not make a specific general adverse credibility determination. That's right. I think that the Board also treats her testimony as credible. I agree with that. Then along the way, the Board says that the IJ said with a couple of these incidents, or at least with one, the one you pointed out, he tended to discredit her version of what happened, or part of what she said. So I just want to make sure I understand from the government's perspective which of these incidents should be considered in determining whether or not substantial evidence supports the IJ's decision. Okay. I'll just list them for you. The initial confrontation with Hamad, where there was... I'm in. You just... Why don't you just come closer to that microphone? Is this a mic? Yes, it is. Just pick it up a little. There you go. Sorry. Project, you know, to us. Well, the initial confrontation with Hamad, however... Which was essentially a shoving match. Yeah. Okay. Then they're all taken to the police station. Can you answer the question I asked? Is there any record evidence of what happened to Hamad? Well, I had the opportunity to kind of cruise through, and it seems like they're all arrested. Then the police talked to all of them. They determined that it's a religious issue, so all three of them are transferred to this other bureau, for lack of a better word, that deals with the religious issues. They're all detained, but they're... By all you mean, Hamad too? Yeah. But they're detained separately, so I don't know if they even know at what point he's released. Yeah, and the record doesn't seem to reflect whether he's detained as long as them or for the same time period? Yeah. Okay. You do have one important item here, which is the fact that you have a relationship between a Christian and a Muslim. That's important, isn't it? That's the nature of the unrelenting dispute. Right. She was trying to help her. Yeah, that's... So you're assuming the record can establish that this is at least some religious motivation on those two incidents? Yeah, that there is. Okay. That's two. All right. Okay, so... Well, there's the ransacking of her law office. How many days after, or what was the time period between... Let's see here. Between the incident with Ahmed and her office being ransacked? We know that everything... Two days, right? We know that everything occurs within a relatively... Yeah, I think it's two days. It's a very short period of time, right? Yeah. So ransacking of the office, but there's no injury, right? They're not even there, apparently. And then the one that does not count is the stick incident, when they're struck with sticks, because there's no finding that that was related to the prior incidents. They were dressed in white. In white costumes, but they didn't say... They weren't costumes, they were... I'm sorry, bad words. But in some kind of garb that she thought... Religious garb. Yeah. The same... So the IJ said that with respect to that incident, she didn't find all of... She didn't find that. That one does not count. There was an insufficient testimony to show a connection. Right. As opposed to an absence of credibility. She believed she was attacked and injuries occurred, but the IJ couldn't find a connection between... That's right. How many days after the altercation did that occur? Looks like three. So we're still in a pretty close... Right. All these are happening... And then there was a couple other incidents, right? There's the phone call, the speeding car. Yeah, that's it. The phone call, and then there's the speeding car. I think the speeding car is like a month later, and she's hurt because her husband pulls her down. So the one that we take out of that calculus is the incident on the street with the stick. Right. All the others are looked at in totality. Right. Why isn't that enough to establish past persecution? Well, it's an extreme concept. You don't have to establish... A predicate is not actual physical harm. No, I acknowledge that. But even under this Court's precedent, that type of conduct would not be considered past persecution, like Fassad and those type of cases. She was pregnant at that time as well. Yeah, at least during the car thing, the speeding car, which is like a month later. And keep in mind, she does know what this Ahmaud, I hope I'm pronouncing that right, looks like. So when she sees the attackers with the sticks... She referred to them as some sort of group, sect, kind of. I thought it was two in my... Yeah, there were two. Yeah, two. Two different... They're two people. No, but they're coming from some particular religious group. Yeah. They wore a certain uniform. Right, a certain kind of clothing, all sort of affiliated with this particular sect or group of... I thought that was the point of her testimony, was that she was identifying them all as the same group as Ahmaud. Yeah, and she thought that Ahmaud used to be part of that group, but I think she said he was no longer. But she somehow linked him to these people. Okay, that's fine. I don't have anything further. Thank you. Thank you. Thank you. You have a little rebuttal time. Your Honors, I don't really have much to say in the way of rebuttal. I would just again urge that the Court find that the BIA and the immigration judge erred in not finding past persecution. What's your Best Ninth Circuit case to suggest that these events add up to past persecution? That's a good question, Your Honor. Well, and if you don't have it at hand. I mean, the government suggests that under our previous cases, these don't add up to past persecution, so I was wondering what your response to that is. Well, the government mentioned Mansour and gave the citation. In that case, I believe it was just an issue of whether or not the treatment of Coptic Christians by Muslim Brotherhood was enough in and of itself to find past persecution. And the holding in that case was that, no, that's not enough. Discrimination does not equal persecution. But in the instant case, Your Honor, there was indeed certain elements that we've both enumerated that could support a finding of past persecution. With respect to the two men with sticks, I had suggested, Your Honor, that there would be no other reason for two people like that to attack them other than at the instance of Ahmed or other members of the Muslim Brotherhood. So I would urge a finding that the totality of the circumstances, even to the extent where some of the drive-by and some of these other things might be questionable, the totality of the incidents would hopefully suggest a finding of past persecution. Now, if we were to agree with you that the evidence does compel a determination that there was past persecution here, we should remand it back to the Board for further proceedings, correct? If only to allow the government an opportunity to rebut the presumption. Yes, Your Honor. And perhaps to show, under those circumstances, that there were other places in Egypt where your client might live without suffering persecution. Well, that would be a possibility. I mean, that's certainly what the IJ found first time through. Yes, Your Honor. But country conditions may have changed so much that there isn't a good place in Egypt for Coptic Christians, although the community is quite large. If we're talking about the Muslim Brotherhood, I don't think there would be a place in Egypt that would... Well, we're talking about 18 million Coptic Christians, too. Well, yes, Your Honor, but again, as Mansour suggested, just being a Coptic Christian alone certainly would not give rise to allegations of past persecution. But in this case, being a Coptic Christian subject to discrimination generally and the instances to which the petitioners were subject would certainly support a finding. And, Your Honor, rather than a motion to reopen based on changed country conditions, if Your Honors were to find past persecution and remand it to the board, they would most likely remand it back to the immigration court to allow the government an opportunity to rebut the presumption or, as Your Honor suggested, to see if there were some other locales within Egypt where she would not be subject to that persecution. So based on that, Your Honor, I think there was certainly past persecution. The changed country conditions, Your Honor, I think is, in this particular case, I think is really a smaller issue. Okay. Thank you. Thank you, Your Honors. Thank you. This matter is submitted.
judges: Pregerson, Paez, Hurwitz